## STATEMENT OF FACTS

Your affiant is a Special Agent ("SA") with the United States Capitol Police ("USCP"). I have been employed by the United States Capitol Police since 2002. I am currently assigned as a Special Agent in the Criminal Investigations Section where I investigate a multitude of violations of the law. I attended the Criminal Investigations Training Program in 2017 and Uniformed Police Training Program in 2002 at the Federal Law Enforcement Training Center in Brunswick, Georgia and Cheltenham, Maryland respectively for a combined period of nine months. I received extensive and formal on-the-job training in the provisions of Codes of the United States and District of Columbia. I am currently assigned to the Criminal Investigations Section at USCP Headquarters in Washington, D.C.

After speaking with multiple members of the law enforcement community and reviewing law enforcement paperwork from the USCP and based upon my firsthand knowledge investigating this incident, your affiant states as follows:

On January 8, 2025, at about 5:00 p.m. the USCP began investigating an incident involving a vehicle fire Unit block of First Street Northwest Washington, D.C. This location is on the U.S. Capitol Grounds. A map depicting the location of the vehicle fire and the U.S. Capitol is depicted below. This incident occurred while President Carter was laying in state at the Capitol Rotunda and while numerous elected officials visited the Capitol Rotunda.

Around 5:10 p.m., USCP Officer Andwi Nepomuceno and USCP Officer Nicholas O'Neill responded to the area after being approached by an individual who indicated that he saw a man attempting to light his vehicle on fire near the Grant Memorial. The officers approached the area observed an individual later identified as ADRIAN HINTON standing next to his car with the light of a small flame coming from his hands. Officer Nepomuceno activated his body worn camera, began running towards HINTON, and ordered him to stop and step away from the vehicle. HINTON looked at Officer Nepomuceno raised his hands above his head, stepped away from Officer Nepomuceno, turned away from his vehicle, and knelt on the sidewalk now facing the reflecting pool. Officers radioed for additional units and explained the situation. As Officer Nepomuceno approached HINTON, HINTON dropped a small item from his hand into the snow. Officer Nepomuceno noticed light was reflecting off of his vehicle in a peculiar and uneven manor. Laid out on the ground near the vehicle was a plastic bag and multiple containers. Officer Nepomuceno handcuffed HINTON and brought him to his feet. Officer O'Neill asked HINTON if he had anything dangerous in the vehicle and he stated that he did not and that the only dangerous materials he had was the chemical mixture he had spread over his vehicle. HINTON stated that the mixture contained gasoline and Crisco.



*Figure A, Map Showing U.S. Capitol and the Location of the Vehicle Fire in Yellow Circle.*

    A review of U.S. Capitol video surveillance security footage revealed that around 5 p.m., prior to the fire, HINTON removed a bottle containing an unknown liquid from his car. HINTON then poured the liquid on the top of the vehicle. HINTON then utilized a match, placed it near the liquid on the vehicle, and ignited the vehicle on fire. The vehicle caught on fire.

    The USCP Command Center was able to identify the person who lit the fire in the video as the same person who was present when USCP officers arrived based on the similarity of clothing and observation of the person prior and during arrest.



*Figure B, Hinton and Vehicle on Fire.*

HINTON was taken into custody by the USCP immediately after the fire at approximately 5:20 p.m. As he was being taken into custody, HINTON apologized for inconveniencing the USCP and clarified that he was not attempting to self-immolate but only set his vehicle ablaze to protest the recent presidential election. The fire department responded and was able to safely extinguish the fire on the vehicle.

In response to the event, and the proximity of elected officials in the United States Government, a variety of law enforcement agencies responded, including the U.S. Secret Service, the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, and Firearms, and a multitude of D.C. law enforcement agencies. A large cordon was established in the event the vehicle contained any improvised explosives devices. Bomb technicians were called to the scene and rendered the scene safe. Law enforcement and technicians conducted a search and found no explosives or accelerants in the vehicle. The vehicle was impounded and removed from scene and placed in a secure area.

HINTON was arrested and interviewed by law enforcement. After waiving his Miranda

rights and agreeing to speak with law enforcement, HINTON told agents throughout the prior month he had developed a plan to light his vehicle on fire near the U.S. Capitol to draw attention to his displeasure with the recent election results. HINTON stated that he had watched YouTube videos that demonstrated how to mix gasoline and Crisco to make napalm. HINTON also stated that he wanted to make the public aware of his belief that certain elected and nonelected officials are threats to U.S. National Security. HINTON acknowledged that he knew he would be arrested for his actions. He disclaimed an intent to harm anyone, he expressed that his intent was to draw attention political issues.

Based on the foregoing, your affiant submits that there is probable cause to believe that HINTON violated 40 U.S.C. § 5104(e)(1)(A)(i) Unlawful Activities which, in relevant part, states an individual or group of individuals may not carry on or have readily accessible to any individual on Capitol Grounds a firearm, a dangerous weapon, explosives, or an incendiary device and 40 U.S.C. § 5104(e)(1)(A)(ii) which, in relevant part, states an individual or group of individuals may not discharge a firearm or explosives, use a dangerous weapon, or ignite an incendiary device on Capitol Grounds. By using a vehicle containing gasoline in it, covering the vehicle with a substance presumed to be Crisco and gasoline, and then igniting it with a match, HINTON created, carried, and ignited an incendiary device.

_____
Special Agent Richard Larity
United States Capitol Police

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 9th day of January, 2025.


_____
THE HONORABLE MOXILA A. UPADHYAYA
U.S. Magistrate Judge